WILLIAM SANDS, Respondent, v. PABST BREW-
ING COMPANY, Appellant.

Kansas City Court of Appeals, June 8, 1908.

MASTER AND SERVANT: Defective Wagon: Pleading: Contrib-
utory Negligence. A petition by a driver against his master
for a defective brake on a wagon averred that the brake would
not work in consequence of which the team could not hold the
wagon, which dropped into a rut, injuring plaintiff. The evi-
dence showed that the driver forgot to keep his foot on the
brake lever and so was guilty of contributory negligence.
*Held*, that he could not recover because of a defect in the
brake blocks which incidentally appeared in the evidence.

Appeal from Jackson Circuit Court.—*Hon. Thomas J.
Seehorn,* Judge.

REVERSED.

*Harkless, Crysler & Histed* for appellant.

(1)   The evidence failed to show any negligence
on the part of the defendant.    (2)   There was no causal
connection between the alleged defect in the brake
and plaintiff's injury.    Trigg v. Ozark Land Co., 187
Mo. 227; Shore v. Bridge Co., 111 Mo. App. 278.    (3)
A wagon brake is of that class of simple and universal
tools which are matters of common knowledge and of
which the court may take judicial knowledge.    Post
v. Railroad, 121 Mo. App. 562.    (4)   The condition
was as equally open to inspection and knowledge by
the plaintiff, as by the defendant, and plaintiff had
the same opportunity to observe and know the condi-
tion of the brake before he started with the load that
the defendant had, and must, therefore, be held to have
assumed the risk.    Meyers v. Glass Co., 107 S. W.
1041.    (5)   Plaintiff himself was guilty of negligence
in the manner in which he drove the wagon and manip-
ulated the brake.

*T. A. Milton* and *E. J. Sherlock* for respondent.

(1)    The appellant was bound to furnish to respondent a wagon that was reasonably safe for the purpose of carrying such a load over such roads as the respondent had to travel in making the delivery, as shown by the evidence.    (2) ˙The respondent exercised all the care he was required to exercise when he inquired of the foreman, at the time he was about to start with his load, whether this wagon was in order and was assured by both of them that the wagon was in order and to take it and go ahead; no defect was obvious to the respondent.    (3)    Respondent had a right to assume that his employer would not give him a wagon that was out of order to perform a service so dangerous, as the evidence shows this to have been.    (4)    It was not the respondent's duty to know anything about the condition of this wagon, which was not the wagon used by him, unless the defect was so obvious that no prudent man would incur it under like circumstances. (5)    But it was the duty of the appellant to know the actual condition of the wagon when it assured the respondent that the wagon was in order, when he inquired concerning its condition and they ordered him to use it.    Tuckett v. American S. & H., 4 L. R. A. 990.

ELLISON, J.—Plaintiff was in defendant's employ as a teamster and was mainly engaged in delivering beer in barrels and bottles to defendant's customers. While returning from a delivery trip he was thrown from the wagon and suffered the injury for which this action was brought.    He recovered judgment in the trial court.

It appears that plaintiff at the time of his injury was about thirty-eight years old and had been engaged in driving wagons for more than twenty years.    He had been driving for defendant in delivering beer for four or five years.    The wagons and teams were furnished by defendant.    He had driven the wagon he was using

when hurt perhaps once, about three weeks before. He reported the brake as needing repair and the foreman directed to take it to the shop for repair. He did so and saw nothing more of it until the day of his injury. On that day he had been out delivering beer in Kansas City and when he returned, about one o'clock, the foreman told him he must take a load out about nine miles to a village called Sugar Creek. He protested that it was too late to make the trip, but the foreman ordered him to go. He was put in charge of this wagon which he had taken to the shop to be repaired, and after receiving a statement from the foreman that the wagon was all right, and doubtless remembering that he had taken it to the shop for repair and supposing it had been repaired, he put on his load, took an assistant along and started for Sugar Creek. On the way out he had to go up and down hills and thereby soon discovered that the brake was still out of repair and would not work properly. But he said that he could not well turn back and so kept on his way and made his delivery, getting through about nine o'clock at night. He then loaded his wagon with empty beer barrels and cases and started on the return trip. He came to a hill and, as charged in his petition, the brake would not work, in consequence of which the team could not hold the wagon as it should be and they went down "in a trot—a dog trot" until, near the bottom, the wagon wheel dropped into a rut and threw plaintiff off so that the wheels passed over him doing the injury of which he complains.

It seems that the brake was operated with the foot. The driver would place his foot against a lever, push it forward to where he wished it and lodge it in a ratchet which should hold it in position. The ratchet was in such condition that it would not hold the lever and when the foot was taken off it would "fly" out and back, thus releasing the brake; so that plaintiff used

the brake by keeping his foot on the lever.    But in going down the hill where he was hurt, after pushing the lever forward he thoughtlessly (he stated that he forgot) took his foot off and thus released the brake. His knowledge of this condition of the brake and of the necessity of keeping the foot on the lever was stated again and again in his testimony.    It was repeated until he lost patience with the questions.    It became so plain that his own neglect to hold the lever was the cause of the brake not being held in place that the trial court took away from the jury all consideration of the lever and ratchet.    In this the court was fully justified by plaintiff's entire testimony in his own behalf.    He had gone over the road only a few hours before with a heavier load and he knew the exact condition of the brake and how it should be handled in order that it would operate, and yet carelessly allowed it to be released as he started down the hill.    [Meyer v. Obear Glass Co., 129 Mo. App. 556, 107 S. W. 1041.]

This leaves for inquiry whether there was any other defect in the brake.    We find there was nothing upon which a case could be made against defendant.    His case was built upon the defects just discussed.    Defects with which he was perfectly familiar and for which he had, in going out, applied the simple remedy of keeping the lever in position with his foot.

Failing in that defect by reason of his own negligence, he falls back upon another matter which appeared only incidentally in testimony.    That is, that one of the blocks which clasped one of the wheels was a little loose.    But he cannot be allowed to stand on this. He stated and reiterated that the cause of the wagon getting beyond control was the failure of the lever to remain in the position he would place it.    That "that was the cause of the wagon rushing on the horses." He stated that he pushed the lever up, not as far as it would go, but as far as he wanted it.    That he "tight-

ened it up to where it ought to be." That he "thought he had it tight enough." That he "had the brake on, but it would not hold." It is thus apparent that one block being a little loose had nothing to do with the accident and that, in fact, he had the brake tightly set until he released the lever by taking his foot off.

The evidence leaves plaintiff without legal standing, and we must reverse the judgment. All concur.